■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL T. BUNTING, Appellant.—Main, J. Appeal from a judgment of the County Court of Broome County (Coutant, J.), rendered October 25, 1985, upon a verdict convicting defendant of the crimes of attempted burglary in the second degree, attempted robbery in the second degree, burglary in the first degree, robbery in the first degree (two counts), murder in the second degree and conspiracy in the fourth degree.

On September 3, 1984, Jennie Kolba encountered a man at her front door inquiring as to whether her husband, George Kolba, Sr., would put an addition on his home. Mrs. Kolba responded that her husband did not do that type of construction but that she would refer him to her son. When Mrs. Kolba went to get a piece of paper, she noted that her dog was barking at the back door and she saw a man on her back

patio. As she went to phone the police, both men fled. Three weeks later, on September 24, 1984, both Mr. and Mrs. Kolba were at home. At approximately 10:00 P.M., as Mr. Kolba went to the back door to put the dog outside, he was hit over the head and two hooded men entered the house. While one man dealt with Mr. Kolba, the other forced Mrs. Kolba to open a safe and removed an amount of money. They then called someone to pick them up and left. Mr. Kolba died as a result of strangulation and injuries sustained during the robbery.

A subsequent investigation revealed that there had been a conspiracy to rob the Kolbas, and defendant was arrested as part of this conspiracy. It was alleged that defendant, a resident of Virginia, was recruited by a friend to participate in the crime, that defendant was the man whom Mrs. Kolba encountered at her front door on September 3, 1984, and that defendant drove the two men who entered the Kolba home and killed Mr. Kolba on September 24, 1984 to and from the scene of the crime. Following a jury trial, defendant was convicted of attempted burglary in the second degree and attempted robbery in the second degree with respect to the September 3, 1984 incident, of burglary in the first degree, two counts of robbery in the first degree and murder in the second degree with respect to the September 24, 1984 incident, and of conspiracy in the fourth degree. Defendant was sentenced to indeterminate prison terms of 2 to 6 years for the convictions of attempted burglary in the second degree and attempted robbery in the second degree, the sentences to run concurrently. He was also sentenced to 22 years to life imprisonment for the conviction of murder in the second degree and 8⅓ to 25 years for each of the convictions of robbery in the first degree and for burglary in the first degree, these sentences to run concurrently to each other but consecutively to the first two sentences. Finally, defendant was sentenced to 1 to 3 years' imprisonment for conspiracy in the fourth degree to run concurrently to the other sentences imposed.

Prominent among defendant's contentions on this appeal is his argument that County Court should have suppressed the results of a pretrial lineup because the lineup procedure was suggestive and the two witnesses who viewed the lineup had insufficient bases for their in-court identification of defendant. We do not agree. Our examination of a photograph of the lineup reveals that the lineup participants were comparable in terms of their appearance. Although defendant was the only lineup participant wearing a mustache, Mrs. Kolba had previously described the man who came to her door on Sep-

tember 3, 1984 as clean shaven. Thus, there was a sufficient degree of resemblance among the lineup participants so as not to render likely defendant's mistaken identity as a result of undue suggestiveness *(see, People v Adams,* 53 NY2d 241, 251-252; *People v Accoo,* 126 AD2d 730, *lv denied* 70 NY2d 641). We find no reversible error with respect to the other issues raised by defendant concerning the lineup. Having decided that County Court properly admitted the lineup results, we need not address the issue of whether there were independent bases for the witnesses' in-court identification of defendant.

Prior to defendant's arrest, one of the coconspirators, Donald Black, was arrested in Virginia. Black was the person who originally invited defendant to become involved in the conspiracy. After his arrest, Black agreed to wear a tape recorder and transmitter and engage defendant in conversation about the conspiracy. Defendant now contends that the recording of the conversation that took place should have been suppressed because Black was mentally incapable of consenting to the taping, since he was under a great deal of pressure and had tried to commit suicide. Obviously, consent to participation in a scheme such as this must be voluntary, not procured by threats or coercion *(cf., People v Gonzalez,* 115 AD2d 73, 79, *affd* 68 NY2d 950), and a person's mental capacity to consent is a factor to be considered in determining whether consent is voluntary or is the product of coercion. Although Black clearly was experiencing personal problems at the time he agreed to participate in the scheme, the testimony of the police officers involved in the scheme and of Black himself demonstrates that Black was mentally capable of consenting to his participation. There is no evidence whatsoever that the police took advantage of Black's mental state or coerced him in any way into participating in the operation. Accordingly, the People met their burden of demonstrating Black's voluntary consent. With respect to defendant's claim that the People failed to lay a proper foundation for the admission of the tape into evidence, we note that defense counsel voiced no objection to its admission, and this issue has not been preserved for our review *(see,* CPL 470.05 [2]).

We find no error in County Court's refusal of defendant's request to call alibi witnesses and to recall certain prosecution witnesses. It is clear that the lines of questioning which defendant proposed for the prosecution witnesses were either irrelevant or could have been covered on cross-examination. With respect to the alibi witnesses, CPL 250.20 (3) provides that if a defendant attempts to call an alibi witness without

having served on the People the requisite notice of alibi, County Court may, in its discretion, exclude such testimony. While the Court of Appeals has noted that a court should not deny a request for a short adjournment to obtain alibi witnesses when the witnesses are within the jurisdiction and the defense has made a showing of good faith *(People v Foy,* 32 NY2d 473, 478), the record in this case reveals that the requested witnesses were not within the jurisdiction and that nothing unexpected had occurred during the trial to excuse defendant's failure to make an earlier request for alibi witnesses. As County Court noted, a purpose of CPL 250.20 was to prevent such 11th-hour attempts to call alibi witnesses. Thus, we find no abuse of discretion in the denial of defendant's request.

We find the remainder of the issues raised by defendant to be similarly without merit. Viewing the evidence in the light most favorable to the People *(see, People v Malizia,* 62 NY2d 755, 757, *cert denied* 469 US 932), it is apparent that the People proved beyond a reasonable doubt that Mr. Kolba was murdered in furtherance of the burglary and robbery of the Kolba home *(see,* Penal Law § 125.25 [3]), that the evidence presented was legally sufficient to support defendant's conviction on all counts, and that the jury's verdict was not contrary to the weight of the evidence. Finally, we see neither abuse of discretion nor extraordinary circumstances justifying our interference with County Court's discretion in sentencing defendant *(see, People v Cyr,* 119 AD2d 901, *lv denied* 68 NY2d 756).

Judgment affirmed. Kane, J. P., Main, Mikoll, Levine and Harvey, JJ., concur.